FRANKLIN COUNTY *v.* McRAVEN.

Opinion delivered March 3, 1900.

STENOGRAPHER'S SALARY—LIABILITY OF COUNTY.—Under the act of March 16, 1897, providing for the appointment of a court stenographer and allowing such stenographer a salary of $800 "to be paid out of the stenographer's fund by the several counties composing the circuit," a county is not liable for the payment of its *pro rata* of such salary out of the general revenue or any other fund if there is no money in the "stenographer's fund." (Page 566.)

Appeal from Franklin Circuit Court, Ozark District.

JEPHTHA H. EVANS, Judge.

STATEMENT BY THE COURT.

On July 1, 1899, John McRaven filed his claim in the county court of Franklin county against said county for service as court stenographer for the quarter ending July 1, 1899, in the sum of $63.87.

The claim was regularly filed, and the circuit judge duly certified same. The county court at first allowed the claim, and ordered a warrant drawn for the payment of same out of the stenographer's fund. Afterwards, at the same term of court,

the order of allowance and directing the warrant for payment was revoked, as follows: "It since appears to the court that there are no sufficient funds on hand to pay said warrant. It is therefore by the court ordered and adjudged that the action of the court in allowing said claim, and the order to issue said warrant therefor, be and the same is hereby revoked, and the clerk of this court is hereby ordered to cancel said warrant, and that the claim be, and is hereby, dismissed.

From this order of disallowance McRaven appealed to the circuit court, where the judgment was reversed, and judgment was ordered to be entered for McRaven, and the clerk of the county court was ordered to draw his warrant upon the treasury, to be paid out of the circuit court fund of Franklin county. The county filed a motion for a new trial, alleging as grounds that the order and judgment aforesaid of that court in this cause is contrary to the law, contrary to the evidence, and contrary to the law and evidence. The circuit court overruled this motion for a new trial, whereupon the defendant prayed an appeal to the supreme court, which was granted.

The bill of exceptions shows these undisputed facts: That the appellant is the duly-appointed acting court stenographer within and for the fifteenth judicial circuit of Arkansas; that there was due him for services as such the amount of $63.87; that he has presented his claim, which was examined and allowed, and a warrant ordered to be drawn upon the stenographer's fund for that amount, and, it appearing to that court that there were not sufficient funds on hand in the stenographer's fund to pay the warrant, the order issuing said warrant was revoked, and the claim dismissed; that at that time there was only $3 in the stenographer's fund. It was admitted that an appropriation had been made by Franklin county for circuit court expenses generally, but no specific appropriation had been made by said court to pay said stenographer.

The act of March 6, 1897, is entitled "An act for the appointment of a court stenographer," and is as follows:

"Section 1. That the judge of each judicial circuit of the state shall appoint a competent official stenographer for his circuit upon the petition of the majority of the licensed resident

lawyers of his circuit, which petition shall recommend some competent person, who is a resident of the state, who shall be a sworn officer of his court, and whose term of office shall end at the same time as that of the judge who appointed him, and who may be dismissed from office by the judge for incompetency, neglect of duty or misbehavior.

"Sec. 2. The duty of the stenographer shall be to attend all terms of the circuit court held within and for the circuit for which he is appointed, and he shall, when so requested by either party, make a stenographic report of all oral proceedings had in such court, including the testimony of witnesses, with the questions to them, *verbatim*, the oral instructions of the court and any further proceedings or matter, when directed by the presiding judge or upon request of the counsel so to do, and whenever during the progress of the cause any question arises as to the admissibility or rejection of evidence, or any other matter causing an argument to the court, such argument shall not be recorded by the stenographer unless requested by the counsel in said cause, but he shall briefly note the objections made and the ruling thereon and any exception taken by either party or his counsel to such ruling.

"Sec. 3. It shall be the duty of such stenographer to furnish twenty days from the conclusion of the trial thereof, or from the time of the demand, if made after the trial, a long-hand or type-written copy of the proceedings so taken in short-hand with the caption showing the style of the case, its number, the court in which it was tried and when tried, and sign, certify and file the same in the office of the clerk of the court in which the case was tried.

"Sec. 4. Said stenographic notes so taken shall be kept in the office of the clerk of the court wherein such notes were taken; *provided*, that said stenographer shall have the privilege of carrying said notes from one court to another within the judicial circuit for the purpose of transcribing the same for use of the parties or the court, and when the same have been so transcribed shall be returned to the clerk of the court wherein the proceedings were had.

"Sec. 5. The stenographer shall receive a salary of eight

hundred dollars ($800) per annum, to be paid quarterly out of the stenographer's fund by the several counties composing the circuit for which he was appointed, in proportion to the population that each county bears to the population of the whole circuit, as shown by the last and each ensuing federal census, said salary to be adjusted by the presiding judge.

"Sec. 6. A stenographer's tax fee of three dollars shall be taxed in each case in which the stenographer has served upon the request of either party as cost and collected and paid into the treasury of the county in which the case was tried, as the jury tax is by the law collected and paid in, and either party demanding a bill of exceptions shall be charged at the rate of five cents for each hundred words transcribed by tl e stenographer, the same to be charged by the clerk and collected by the sheriff as costs in the case and paid into the county treasury, together with the tax fee of three dollars, as a stenographer's fund, which shall be kept by the treasurer as a separate fund, to be designated the stenographer's fund.

"Sec. 7. In all cases no party shall be denied his bill of exceptions on account of his inability to pay the stenographer's tax fee and for transcribing the stenographic notes when he makes affidavit that he has no property, and is unable to pay the same.

"Sec. 8. The transcribed notes of the stenographer mentioned in section 6 of this act shall be certified to by the stenographer, and shall be taken as a part of the transcript, and no clerk shall make any additional charge for same other than the five cents per hundred words mentioned in section 6 of this act."

*Jeff Davis, Attorney General*, and *Chas. Jacobson*, for appellant.

It was error to order the stenographer's salary to be paid out of the contingent fund of the court. Acts of 1897, ch. 48, § 5; Sand. & H. Dig., § 1261; 39 Barb. 272.

*Oscar L. Miles*, for appellee.

The court stenographer is an officer of court with a fixed salary, and this salary must be paid. Act March 16, 1897.

*Ed. H. Mathes*, for appellant in reply.

The act of 1897, section 5, makes the stenographer's salary payable out of a special fund—the *stenographer's fund,*—and these words must be construed to have some meaning, rather than to be mere surplusage. 11 Ark. 44. There is no ambiguity in this language, and it should be construed according to its plain and ordinary meaning. 35 Ark. 56; 1 Bl. Com. 58, 60; Sedg. Stat. Const. 231; 17 Ark. 608; Lieber, Herm. 11; 22 Ark. 369; 24 Ark. 487; 28 Ark. 200; 38 Ark. 205. There is no analogy between the compensation of the jurors and stenographers, the compensation of the former coming from the county general funds. Cf. Sand. & H. Dig., §§ 6411, 3335.

WOOD, J., (after stating the facts.) The question is, are the counties of a circuit absolutely liable for their *pro rata* of the stenographer's salary of $800, where there is no money, or not sufficient money, in the "stenographer's fund" to pay such *pro rata?* The question is by no means of easy solution, and the learned circuit judge has favored us with an opinion which is a forcible and plausible presentation of his views. But, after a careful consideration of the whole act, we are constrained to the opinion that he is in error. He suggests that if the fifth section read: "The stenographer shall receive a salary of $800 per annum, to be paid quarterly by the counties composing the circuit for which he was appointed, in proportion to the population that each county bears to the population of the whole circuit as shown by the last and each succeeding federal census, said salary to be adjusted by the presiding judge," then the meaning of the section could hardly be doubted. This omits the important phrase, "out of the stenographer's fund," the basis of the whole contention, which, the circuit judge argues, could not change the liability of the county from an absolute one. These words, "out of the stenographer's fund," are definite, plain, and significant. According to the most familiar canons of construction, they must be retained, and given their obvious and natural meaning, if it is possible to do so without doing violence to the legislative intent, as gathered from the whole act. *Wilson* v. *Biscoe*, 11 Ark. 44. We think it is impos-

sible to retain the phrase, "out of the stenographer's fund," in the connection used, and give the words the full force of their plain meaning, if the act is to be construed as fixing an absolute liability on the counties, regardless of whether there is any money in "the stenographer's fund." But, on the contrary, this phrase can be retained, and given its unambiguous import, by construing the act as intended to fix an absolute liability upon the counties for their *pro rata* only in the event of there being that much money in "the stenographer's fund." "The stenographer shall receive a salary of eight hundred ($800) dollars per annum, to be paid quarterly out of the stenographer's fund," is the language. Designating a particular fund, and prescribing payment out of that fund, excludes the idea that there can be payment in any other way or out of any other fund.

The conclusion by the learned judge "that all the provisions of the act about the stenographer's tax fee charged and stenographer's fund are inserted for the purpose of providing complete or partial indemnity to the counties, in return for the burden cast on them by the act," is inconsistent with the language of both the fifth and sixth sections of the act; for, if such had been the design of the legislature, it would have doubtless provided for the collection of the charge of five cents for each hundred words transcribed by the stenographer, and the tax of three dollars, to be charged by the clerk and collected by the sheriff, as costs in the case, and paid into the county treasury, and stopped there; or else said, "paid into the county treasury to the general fund." Such would have been the reasonable and natural way of expressing it if the circuit judge were correct. But the language, "and paid into the county treasury *as a stenographer's fund, which shall be kept by the treasurer as a separate fund, to be designated the stenographer's fund,*" shows that the intent of the legislature was not to reimburse the counties, but to provide the only method for raising the fund, and the only fund out of which the stenographer could be paid. This view harmonizes and makes consistent the language of the fifth and sixth sections, but no other view will; for the language of the fifth section, "to be paid quarterly out

of the stenographer's fund," was wholly superfluous, unreasonable and meaningless if the idea was to render the counties absolutely liable, and to provide total or partial indemnity.

Because the sixth section provides for a tax fee of three dollars, to be collected and paid into the treasury "as the jury tax is by the law collected and paid into the county treasury," the circuit judge reasons that, as the juror must serve, and is allowed two dollars a day absolutely for his services, although no statute in express terms provides absolutely or contingently for its payment by the county where the service is rendered, the stenographer's salary should likewise be allowed and paid absolutely by the county in which his service is rendered. Sec. 3335 of Sand. & H. Dig. is as follows: "Jurors shall be allowed compensation as follows: Each grand or petit juror in the circuit court, per day, $2.00." This section provides absolutely for the payment of two dollars per day to each juror. If it had read: "Jurors shall be allowed compensation as follows: Each grand or petit juror in the circuit court per day $2.00, to be paid out of a *jurors' fund*," and had there been a provision for a separate "*jurors' fund*," there might have been some analogy. But without such provisions there is none whatever, except in the amount of tax that is collected. There is no valid reason to hold that because a juror is paid his per diem absolutely by the county, the stenographer should also be paid. But, without extending the argument further, it suffices to say that the language of the fifth and sixth sections of the act indicates clearly the legislative purpose to fix the stenographer's salary at $800 per annum as the maximum limit; that this salary was to be paid out of a fund provided by the act for its payment; that it cannot be paid out of any other fund. It follows necessarily that, where there are not sufficient funds in the treasury of a county accumulated and set apart, as provided by the act, to meet the *pro rata* for that county as adjusted by the presiding judge, the salary of the stenographer is lessened *pro rata*. In other words, the stenographer must look alone for his salary to the fund set apart for that purpose. The salary is $800 per annum to be paid quarterly. If, when the stenographer presents his claim for allowance at the end of

each quarter, there is no money, or not sufficient money in the stenographer's fund to pay same, the claim is not for that reason void and non collectible.   It is still a good and valid claim against the county whenever there shall be at the end of any quarter or at the end of the year, when final settlement is made, sufficient money in the treasury to the credit of the stenographer's fund to pay same.   The phrase "to be paid quarterly" was passed for the stenographer's benefit; and if, at the end of any quarter, there is not sufficient money in the stenographer's fund to pay the *pro rata* of his salary which has then accrued, he is entitled to same, or so much thereof as may then be in the stenographer's fund, not exceeding the amount then due.   If there is no money, or not sufficient to meet the salary which has then accrued, the claim is continued in force until the next quarter, and so on to the end of the year, and to the end of his term.   The stenographer, under the act, in other words, can and must receive $800 per annum for his services, if the fees which have accumulated under the act for the year amount to that sum; and the salary is payable quarterly.   The judgment of the circuit court making the county responsible absolutely for the payment of the stenographer's claim is therefore erroneous, and the cause is reversed and remanded for further proceedings in accordance with this opinion.

BUNN, C. J., (dissenting).   John McRaven, a duly-appointed and acting circuit court stenographer for the circuit, filed his claim against the county of Franklin for services, amounting to the sum of $63.87, for the quarter ending July 1, 1899.   The account was duly certified by the circuit judge, and the county court made the following order:   "Examined and allowed in the sum of $63.87, stenographer's fund, this 24th day of July, 1899.   [Signed] L. R. A. Wallace, Judge," and then the following subsequent order, "Order of allowance of this claim made on the 24th day of July, 1899, the day of the present term, is revoked and set aside, and this claim is dismissed, because there is no fund in the treasury upon which to draw.   This August 5, 1899.   (Signed) L. R. A. Wallace, County Judge."

The court then made its formal order revoking the first order, as stated, and the clerk was ordered to cancel the warrant issued under the first order of allowance, and the claim was dismissed. McRaven appealed to the circuit court, where the judgment of the county court was reversed, and the clerk of the county court was ordered to draw his warrant for the amount on the circuit court fund in the treasury of Franklin county, and from this judgment the county appeals to this court, and the judgment of the circuit court is reversed by a majority of this court on the ground set forth in the opinion.

The county judge manifestly had no right to revoke the order of allowance and for the warrant made in the first instance. The county judge had no right to dismiss a claim because of want of funds in the county treasury. That was a matter he could know nothing about, officially or judicially. His first order was correct, and McRaven was entitled to the warrant at all events. The treasurer of the county, on its presentation, would of course have had the right to refuse to pay the warrant for want of stenographer's funds on hand, and it would be his duty to indorse his refusal and reason on the warrant; but the county judge could not assume to perform this duty, and his statement that there was no fund upon which to draw is no evidence at all of that fact.

The judgment of the circuit court was erroneous in directing a warrant to be drawn on the "circuit court" fund in the county treasury, instead of the stenographer's fund, but in other respects it was proper. The judgment of the circuit court should therefore have been merely modified, and not reversed.